UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00581-GNS-DW

JUSTIN S. MARTINDALE                                                PLAINTIFF

v.

UNITED STATES OF AMERICA                                       DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss, or alternatively, Motion for Summary Judgment (DN 13) and Defendant's Motion for Leave to Exceed Page Limit in Reply (DN 21). The motions are ripe for decision. For the reasons stated below, the Court **GRANTS** Defendant's motions.

## I.    BACKGROUND

This action arises from the denial of benefits under the Servicemembers' Group Life Insurance Traumatic Injury Protection program ("TSGLI") by the U.S. Army and Army Board for Correction of Military Records ("ABCMR"). Plaintiff Justin S. Martindale ("Martindale") is a former military service member who suffered a fracture of his left tibia and fibula during an all-terrain vehicle accident on November 7, 2009. (Compl. ¶ 16, DN 1).

On or about February 3, 2011, Martindale presented a claim for compensation under TSGLI for his injury to the Office of Servicemembers' Group Life Insurance ("Office"). (Compl. ¶ 17; Admin. R. 3-12, DN 13-2 [hereinafter AR]). In his application for benefits, Martindale indicated that he suffered an "Other Traumatic Injury" which rendered him "[u]nable to bathe independently" and in need of "physical assistance (hands-on)" for the period time from

November 7, 2009, to December 15, 2009. (AR 10). In support of his application, Martindale included an evaluation from his treating doctor, Dr. Douglas P. Kirkpatrick ("Dr. Kirkpatrick"), who indicated that Plaintiff needed physical assistance for bathing and dressing for the period of November 7, 2009, to December 10, 2009. (AR 10-12).

On March 17, 2011, Martindale was notified of the denial of his TSGLI claim. (AR 59-63). The letter of denial letter accompanying the TSGLI Claim Certification Worksheet indicated that Plaintiff's application failed to show that he was "unable to independently perform at least two activities of daily living (ADLs) for at least 30 days" which inability had to be certified by a medical professional. (AR 59, 63).

On May 3, 2011, Plaintiff requested reconsideration of the denial of TSGLI benefits. (AR 64-137). In the May 18, 2011, letter denying reconsideration of the claim, the Office provided the following basis for the denial:

> The documentation provided indicated that you did not meet the minimum TSGLI standards for Activities of Daily Living (ADL) losses. The Soldier is considered to have a loss of AOL if the Soldier requires assistance to perform at least two of the six ADL. If the Soldier is able to perform the activity by using accommodating equipment (such as a cane, walker; commode, etc.), then the Soldier is considered able to independently perform the activity. The documentation submitted to this office indicated that you were ambulating with crutches before the 30 day consecutive ADL mark for payment.

(AR 138).

On June 30, 2011, Plaintiff appealed the denial to the TSGLI Special Compensations Branch. (AR 140-234). On July 19, 2011, the TSGLI Special Compensation Branch denied the appeal on the basis that:

> The documentation provided indicated that you were able to perform the activities of daily living with the use of adaptive measures. If the Soldier is able to perform that activity by the use of adaptive measures or equipment (such as a cane, crutches, wheelchair, or the ability of other limbs of the body, etc.) then the Solider is considered able to independently perform the activity.

2

(AR 235-36).

On May 23, 2012, Martindale appealed to the ABCMR. (AR 251-415). The three-person ABCMR board denied his application on the basis that "there [was] insufficient evidence to grant the requested relief." (AR 250). By memorandum dated May 1, 2013, ABCMR notified Martindale of its final denial of Plaintiff's TSGLI claim. (AR 237-50). Martindale subsequently filed the present action seeking review of the denial of his claim for TSGLI benefits pursuant to 38 U.S.C. § 1975. (Compl. ¶¶ 2, 27).

## II. JURISDICTION

The Court has jurisdiction over the parties pursuant to 38 U.S.C. § 1975 as this action involves a dispute related to the TSGLI.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ." *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). "When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'" *Id.* (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)).

While the Court views the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

The United States argues that summary judgment must be granted in this matter because the denial of benefits was not arbitrary and capricious based on the administrative record. (Def.'s Mem. in Supp. of Mot. for Summ. J. 17, DN 13-1). "[I]n cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no *de novo* proceeding may be held." *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) (citations omitted). The statute which grants the Court jurisdiction in this case, Section 1975, provides for judicial review without setting forth the standards to be used or the procedures to be followed. *See* 38 U.S.C § 1975. Therefore, the Court's review is confined to the administrative record. *See Austin v. U.S., Dept. of the U.S. Army*, 614 F. App'x 198, 202 (5th Cir. 2015) (finding review was limited to the administrative record under Section 1975).

Challenges to the decisions of military correction boards such as the ABCMR are reviewable under the Administrative Procedures Act, 5 U.S.C. §§ 500-596, which empowers

courts to set aside any final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706(2)(A).  The arbitrary and capricious standard of review requires that deference be afforded to the reviewing agency.  *See Maple Drive Farms Ltd. P'ship v. Vilsack*, 781 F.3d 837, 852 (6th Cir. 2015); *Austin*, 614 F. App'x at 205.  The Supreme Court has held that a district court cannot vacate an agency's decision unless the agency:

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (internal quotation marks omitted) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The agency's decision need only be based on substantial evidence in the record so a reasonable mind might accept the agency's conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The TSGLI provides benefits to service members sustaining a traumatic injury after December 1, 2015, resulting in a "qualifying loss."  *See* 38 U.S.C. § 1980A(a)(1).  A qualifying loss includes "the inability to carry out the activities of daily living resulting from traumatic injury to the brain."  *Id.* § 1980A(b)(1)(H).  The TSGLI, however, also expressly authorizes the Secretary to designate additional qualifying losses.  *See* 38 U.S.C. § 1980A(b)(1).  The relevant regulations include coverage for an "other traumatic injury," which is characterized as a non-traumatic brain injury "resulting in inability to perform at least 2 [a]ctivities of [d]aily [l]iving [("ADL")]."  38 C.F.R. § 9.20(f)(20).  The regulations further define ADL as "the inability to carry out activities of daily living means the inability to independently perform at least two of the

5

six following functions: (A) [b]athing[;] (B) [c]ontinence[;] (C) [d]ressing[;] (D) [e]ating[;] (E) [t]oileting[;] [and] (F) [t]ransferring in or out of a bed or chair with or without equipment." *Id.* § 9.20(e)(6)(vi)). *See also* 38 U.S.C. § 1980A(b)(2) (containing the identical definition for the term "inability to carry out the activities of daily living"). To receive compensation for this type of injury, a claimant must have the loss of two ADLs for a minimum period of thirty consecutive days. 38 U.S.C. § 9.20(f)(20). In addition, the TSGLI Procedural Guide states that "[i]f the patient is able to perform the activity by using accommodating equipment, such as a cane, walker, commode, etc.[], the patient is considered to independently perform the activity." (Def.'s Mot. for Summ. J. Ex. 4, at A-39, DN 13-4). Similarly, as the claim application notes:

> The patient is considered unable to perform an activity independently only if she or she **REQUIRES** assistance to perform the activity. If the patient is able to perform the activity by using accommodating equipment, such as a cane, walker, commode, etc., the patient is considered able to independent perform the activity without requiring assistance.

(AR 10).

In this case, the Administrative Record reflects that the denial of benefits was based upon Martindale's failure to show that he had a loss of two ADLs for at least thirty consecutive days. In making its decision, the ABCMR reviewed Martindale's applications and all of the documents he submitted. These documents included letters from his parents previously submitted as part of the prior applications and appeals. (AR 329-34).

The ABCMR also reviewed Martindale's medical documents and found that they did not support the finding that he was unable to perform his ADLs for 30 or more days. (AR 246). It is not "arbitrary and capricious for the Army to examine and evaluate the underlying records itself, rather than relying on the certifying medical profession's interpretation of the same records."

6

*Fail v. United States*, No. 12-CV-01761-MSK-CBS, 2013 WL 5418169, at *6 (D. Colo. Sept. 27, 2013). As reflected in the conclusion of the ABCMR Record of Proceedings:

> Counsel has stated "no medical evidence exists that he (applicant) was able to use crutches to independently perform any of the claimed ADLs." He also adds that there is no indication that he was able to perform any ADLs even with the crutches or that he used his crutches to enter the shower or support himself while standing in the shower. Counsel has also applied this logic to dressing, lying, sitting and standing without assistance.
>     a.    The arguments [of Martindale's counsel] have been noted; however, other than these arguments, his parents written statements, and the physician statements in Part B of his TSGLI claim form indicating that he could not perform bathing, dressing, or transferring independently, these claims are not corroborated by information in the available medical records. While it is not disputed that the applicant may have required some hands-on assistance performing various tasks during the initial stages of his injury, his medical records show he began use of crutches immediately following the accident.
>     b.    His medical records also show that on 9 November 2009 he was noted to flex and extend at the hip without any pain. On 16 November 2009, he was instructed to put a little bit of weight on the sole of his foot. Beginning 3 December 2009, the range of motion of his knee and ankle were almost near normal. He was directed to continue to work on his range of motion with weight bearing from 40 to 50 pounds. This disputes the argument that he was nonweight bearing for 30 or more days after his injury and/or subsequent to his surgery.
>     c.    Nowhere in the medical documents provided does it show he was directed by medical authorities not to perform any of the claimed loss of ADL's with any other assistance other than his crutches. Therefore, no medical evidence exists showing that the applicant *was not able* (emphasis added) to perform these functions independently. The applicant's injury, an isolated, single limb injury in an otherwise uninjured Soldier, is generally insufficient justification for payment of TSGLI. It is a reasonable expectation that a Soldier is capable of adopting, within 30 days of injury, adaptive behaviors to accomplish all ADLs in coping with a single limb injury.

(AR 249).

The contemporaneous treatment records for the relevant time period of November 7, 2009, to December 10, 2009, support the ABCMR's denial of Martindale's claim. During that period, Martindale had two hospital visits and four doctor's office visits. (AR 24-27). The two hospital visits can be summarized as follows:

7

- November 7, 2009 – the emergency room visit comments noted that Martindale should "[i]ce, elevat[e] & rest. NO WEIGHT BEARING on injured leg – use crutches." (AR 381). There is no reference, however, to any impact that the injury may have on Plaintiff's ADLs.

- November 25, 2009 – the operative notes reflect that Dr. Fitzpatrick performed an intramedullary rodding of the tibia. (AR 379). The notes did not discuss whether the procedure and any limitations may have impacted Martindale's ADLs.

The four office visits can be summarized as follows:

- November 9, 2009 – it was noted that Martindale was diagnosed with a "[t]ransverse facture, midshaft tibia. It is about 90% cortical contact. No fibular facture present." (AR 391). The treatment plan included "long-leg cast application with partial weightbearing on this as tolerated; however, without true ambulation more for stability while standing still." (AR 391). The office visit note makes no mention of whether the diagnosis and treatment have any impact on Martindale's ADLs.

- November 16, 2009 - the physician assistant discussed the condition of the cast and notes that Martindale is experiencing pain. (AR 390). There is no reference to any impact that his injury may have on his ADLs.

- November 19, 2009 - Dr. Fitzpatrick provided minimal information regarding Martindale's physical condition. (AR 388). There is no mention of whether the tibial fracture had any impact on Plaintiff's ADLs.

- December 3, 2009 - The notes reflected that post-op Martindale had an almost full range of motion in his knee and ankle. (AR 387). Dr. Fitzpatrick stated that he

"want[ed] [Martindale] to continue working on range of motion of his knee and ankle. He may be 40 to 50 pounds weightbearing." (AR 387).

Based upon the Court's review of the ABCMR's decision and the medical records, the Court concludes that the ABCMR's final denial of benefits was supported by substantial evidence that Martindale had not presented sufficient evidence regarding the ADLs to qualify for benefits.

In reaching this decision, the Court is mindful of the Supreme Court's edict that "the scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). On appellate review, ABCMR's decision is "entitled to a presumption of regularity." *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009) (internal quotation marks omitted) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)). Although Dr. Fitzpatrick indicated Plaintiff required assistance with bathing, the ABCMR found that Martindale was able to shower with the use of crutches, so that he was capable of performing that ADL. Because the ABCMR's final denial of benefits on this basis was not arbitrary and capricious, Defendant's motion is granted.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, or alternatively, Motion for Summary Judgment (DN 13), and Defendant's Motion for Leave to Exceed Page Limit in Reply (DN 21) are **GRANTED.**

cc: counsel of record